IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QIONG ZHANG and XIN ZHAO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 26-716-CFC-EGT |
| | ) | |
| MARCO RUBIO et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER AND REPORT AND RECOMMENDATION**

Presently before the Court is the motion of Defendants Marco Rubio, U.S. Department of State and Christopher L. Green ("Defendants") to dismiss the Complaint (D.I. 8), as well as the motions of Plaintiff Qiong Zhang and Xin Zhao (together, "Plaintiffs") for leave to file a sur-reply (D.I. 13) and for electronic filing rights (D.I. 16). For the reasons set forth below, the Court recommends that Defendants' motion to dismiss be GRANTED and the Complaint be DISMISSED WITH PREJUDICE. Plaintiffs' motion for leave to file a sur-reply is DENIED, and the Court further recommends that Plaintiffs' motion for electronic filing rights be DENIED as MOOT upon adoption of the undersigned's Report and Recommendation.

## I. BACKGROUND

According to the Complaint, Plaintiff Zhang is the beneficiary of a Form I-129 petition for H-1B classification filed by her employer, which U.S. Citizenship and Immigration Services ("USCIS") approved on October 18, 2023 and is valid through October 9, 2026. (D.I. 1 ¶ 2; *see also* D.I. 1, Ex. A). She has lived and worked in the United States for over a decade and has been a Delaware resident for approximately ten years. (D.I. 1 ¶ 2). On November 28, 2025, she traveled to China to visit her elderly grandmother. (*Id.* ¶ 3). On December 1, 2025, Plaintiff Zhang appeared for her visa interview at the U.S. Consulate General in Wuhan, China and applied to

renew her H-1B visa. (*Id.*). According to the Complaint, the consular officer requested no additional information and identified no deficiency in her non-immigrant visa application but nonetheless "refused" her application under Section 221(g) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1201(g), for "administrative processing." (*Id.*; *see also* D.I. 1, Exs. B & C). On March 5, 2026, the U.S. Consulate General in Wuhan informed Plaintiff Zhang that her case is "still undergoing administrative processing" but "assured" her that USCIS is "actively working on [her] case." (D.I. 1, Ex. D). And on March 17, 2026, in response to an inquiry from the office of U.S. Senator Christopher Coons, the U.S. Consulate General in Wuhan "confirmed that the case is currently refused" under INA 221(g) "for administrative processing." (D.I. 1, Ex. E).[1]

Plaintiff Zhang and her husband Plaintiff Xin Zhao together allege that "Defendants' inaction" has caused – and continues to cause – severe harm. (*See* D.I. 1 ¶¶ 32-36). Plaintiffs claim that Defendants' delay has prevented the married couple from having children and further risks "irreversibly consuming the narrow window in which Plaintiffs can have a child." (*Id.* ¶ 33). Plaintiffs also claim that Defendants' delay has forced Plaintiff Zhang to work from 4:00 p.m. to 3:00 a.m. Hong Kong time – a schedule she "cannot sustain" and "harms her health." (*Id.* ¶ 34). Plaintiffs further contend that Defendants' delay risks lapse of her already-approved H-1B petition, which expires on October 9, 2026. (*Id.* ¶ 36).

On June 18, 2026 and proceeding *pro se*, Plaintiffs filed this case against Defendants, seeking injunctive relief pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C.

---

[1] As of this opinion, Plaintiff Zhang's visa application status is still listed as "refused." *See* https://ceac.state.gov/CEACStatTracker/Status.aspx? (last visited Oct. 1, 2026) ("A U.S. consular officer has adjudicated and refused your visa application. . . . If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete.").

§§ 555(b), 701-706, and the Mandamus Act, 28 U.S.C. § 1361. (*See* D.I. 1). In the Complaint, Plaintiffs expressly "do not ask this Court to direct the outcome of the Application" but rather ask the Court to compel Defendants to "complete the administrative processing and render a decision within a reasonable time." (*Id.* ¶ 6). On August 24, 2026, Defendants moved to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D.I. 8 & 9). The motion has been fully briefed. (D.I. 11 & 12).

## II. <u>LEGAL STANDARD</u>

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). The Court is not, however, required to accept as true bald assertions, unsupported conclusions or unwarranted inferences. *See Mason v. Delaware (J.P. Court)*, C.A. No. 15-1191-LPS, 2018 WL 4404067, at *3 (D. Del. Sept. 17, 2018); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This plausibility standard obligates a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The issue is not whether a plaintiff will ultimately

prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (cleaned up).

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Defendants argue that the Court lacks subject matter jurisdiction under either the Mandamus Act or the APA because Plaintiffs have not identified a mandatory, non-discretionary duty requiring Defendants to re-adjudicate the refusal of Plaintiff Zhang's visa application. (D.I. 9 at 7-13; D.I. 12 at 1-6). In response, Plaintiffs argue that Defendants owe a clear, non-discretionary duty to conclude review of Plaintiff Zhang's visa application. (D.I. 11 at 5-8).

Courts have jurisdiction under the Mandamus Act "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. To qualify for mandamus relief, "a litigant must satisfy three requirements that courts have characterized as jurisdictional: (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Temple Univ. Hosp., Inc. v. Sec'y United States Dep't of Health & Hum. Servs.*, 2 F.4th 121, 132 (3d Cir. 2021) (quoting 33 WRIGHT & MILLER FEDERAL PRACTICE & PROCEDURE § 8312 (2d ed. Apr. 2021)). The APA similarly provides courts with jurisdiction to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Unreasonably delay claims under the APA "can proceed only where a plaintiff asserts that an agency failed to take a ***discrete*** agency action that it is ***required to take***." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphases in original).

Important to this decision, 8 U.S.C. § 1202(d) provides that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." Similarly, 22 C.F.R.

§ 41.121(a) provides that "[w]hen a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer ***must*** issue the visa, refuse the visa, or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa." 22 C.F.R. § 41.121(a) (emphasis added). The regulation further provides that "[n]onimmigrant visa refusals must be based on legal grounds, such as . . . INA 221(g) . . . , or other applicable law." *Id.* 8 U.S.C. § 1201(g) provides that "[n]o visa or other documentation shall be issued to an alien if . . . the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law." Lastly, the State Department's Foreign Affairs Manual provides that denial letters under INA 221(g) cannot state that a "denial is 'pending', 'temporary', or 'interim' or that the case is suspended, ***although it may reference further administrative processing of the case***." 9 FAM 403.10-3(A)(2)(2)(b) (emphasis added).[2]

Plaintiffs present a set of facts seen all over the country: Plaintiff Zhang's visa application was "refused" by the consular officer and placed in "administrative processing." (D.I. 1 ¶ 3; D.I. 1, Exs. C-E). District courts, including in the Third Circuit, have greatly debated whether a refusal for administrative processing constitutes a final adjudication. *Compare Bimbo Bakeries USA, Inc. v. Rubio*, 771 F. Supp. 3d 584, 594 (E.D. Pa. 2025) (refusal of visa application for administrative processing discharges any non-discretionary duty), *with Makdisi v. U.S. Dep't of State*, 832 F. Supp. 3d 445, 461-63 (D.N.J. 2026) (refusal for administrative processing does not discharge non-

---

[2] "The [Foreign Affairs Manual] lacks the 'independent force and effect of law' because it is 'not subjected to notice and comment rulemaking' and it was not 'promulgated pursuant to an independent congressional authority.'" *Myers v. Rubio*, No. 2:24-CV-1592, 2025 WL 1208646, at *8 n.10 (W.D. Pa. Apr. 25, 2025) (quoting *W. Radio Servs. Co. v. Espy*, 79 F.3d 896, 901 (9th Cir. 1996)).

discretionary duty to adjudicate visa application); *see also Yu*, 2025 WL 1669055, at *3-5 (same).[3] Although a close call, the Court concludes that, by informing Plaintiff Zhang that she "will receive another adjudication" after administrative processing is complete, "the State Department is essentially taking the position that the matter submitted to the agency has not been concluded while administrative processing is ongoing." *Yu*, 2025 WL 1669055, at *5 (quoting *Awal v. United States Dep't of State*, No. 24-CV-382 (KMM/ECW), 2024 WL 4979661, at *8 (D. Minn. Dec. 4, 2024)). Defendants' "refusal" of Plaintiff Zhang's visa application for "administrative process" therefore did absolve the agency of its mandatory, non-discretionary duty to adjudicate the application. Federal subject matter jurisdiction exists over Plaintiffs' claims.

**B. Failure to State a Claim**

1. Consular Non-Reviewability

Defendants argue that the doctrine of consular non-reviewability bars this action in its entirety. (D.I. 9 at 13-16; D.I. 12 at 6-9). Plaintiffs respond that the doctrine "does not apply where the government has not made a final visa decision." (D.I. 11 at 8-10 (quoting *P.K. v. Tillerson*, 302 F. Supp. 3d 1, 11 (D.D.C. 2017)). Because the doctrine of consular non-reviewability "does not preclude judicial review of a consular officer's delay when a visa application has been provisionally refused pending administrative processing or a final decision,"

[3] In an unpublished, non-precedential decision, the D.C. Circuit remains the only appellate court to weigh in, finding that a refusal for administrative processing constitutes a final adjudication. *See Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *2 (D.C. Cir. July 24, 2024) ("Because the visa application has already been officially refused, keeping the door open in administrative processing can only benefit, never hurt, the applicant's entry prospects."). But the United States District Court of the District of Columbia has expressly declined to follow *Karimova* in several decisions. *See, e.g.*, *Nagornyi v. Rubio*, No. 25-CV-1321-ZMF, 2026 WL 1893483, at *3 (D.D.C. Mar. 26, 2026); *Tehran v. Rubio*, No. 25-CV-1584 (JMC), 2025 WL 3551629, at *3 (D.D.C. Dec. 11, 2025); *Baygan v. Blinken*, No. 23-2840 (JDB), 2024 WL 3723714, at *5 n.1 (D.D.C. Aug. 8, 2024); *Hajizadeh v. Blinken*, No. 23-1766, 2024 WL 3638336, at *3 n.3 (D.D.C. Aug. 2, 2024).

the Court agrees with Plaintiffs. *See Getson v. Blinken*, No. 23-4027, 2025 WL 1933704, at *13 (E.D. Pa. July 14, 2025); *Makdisi*, 832 F. Supp. 3d at 461; *Yu*, 2025 WL 1669055, at *4 n.41; *Bimbo Bakeries*, 771 F. Supp. 3d at 589-90.[4] The Court thus recommends that Defendants' motion to dismiss be denied as it relates to the doctrine of consular non-reviewability.

2. <u>Unreasonable Delay</u>

Lastly, Defendants argue that Plaintiffs have failed to plead sufficient facts to support a cognizable legal theory of unreasonable delay. (D.I. 9 at 17-21; D.I. 12 at 9-13). In response, Plaintiffs argue that the Complaint contains sufficient facts for the Court to reasonably infer that the alleged delay is unreasonable and that the delay inquiry requires factual determinations inappropriate for resolution at the pleadings stage.[5] (D.I. 11 at 10-13). To determine the reasonableness of agency delay, courts evaluate the "*OCAWU* factors": (1) the length of time that has elapsed since the agency acquired a duty to act, (2) the reasonableness of the delay as judged in the context of the statute authorizing the agency's action, (3) the consequences of the agency's delay and (4) any plea of administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources. *Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*, 145 F.3d 120, 123 (3d Cir. 1998). As explained below, the *OCAWU* factors favor Defendants and mandate dismissal.

---

4 Defendants' interpretation of the doctrine of consular non-reviewability – that it applies when a plaintiff seeks to compel a consular officer to adjudicate a visa application – represents the "minority view," predominantly arising from district courts in the Second Circuit. *See Makdisi v. U.S. Dep't of State*, 832 F. Supp. 3d 445, 461 (D.N.J. 2026) (collecting Second Circuit cases); (*see also* D.I. 9 at 15-16 (citing district courts within Second Circuit)). This Court declines to follow the minority view.

5 The Court disagrees with Plaintiffs' contention that factual disputes preclude resolution of their unreasonable delay claim at this stage, considering courts "frequently decide" unreasonable delay claims in visa adjudication cases on Rule 12(b)(6) motions. *See Myers*, 2025 WL 1208646, at *8 (collecting cases).

Since Plaintiff Zhang's December 1, 2025 visa interview, the length of delay has been approximately seven or ten months, depending on whether the delay is measured up to the date that the Complaint was filed or the date of this decision. (D.I. 1 ¶ 3). Because "[t]he case law, without drawing any bright lines, has found that delays of three to five years are not unreasonable," the first *OCAWU* factor strongly favors Defendants. *Jamoussian v. Blinken*, No. CV2110980KMAME, 2022 WL 538424, at *2 (D.N.J. Feb. 23, 2022) (in non-immigrant visa context, finding eight months reasonable as a matter of law); *Myers v. Rubio*, No. 2:24-CV-1592, 2025 WL 1208646, at *8 (W.D. Pa. Apr. 25, 2025) (in non-immigrant visa context, finding 8.5-month delay reasonable as a matter of law and that "courts considering factually similar cases have found far longer delays reasonable" (collecting cases)); *Denisova v. Mayorkas*, No. 2:23-CV-01902-MRH, 2024 WL 2043664, at *5-6 (W.D. Pa. May 8, 2024) (finding five- or nine-month delay reasonable as a matter of law).[6]

With respect to the reasonableness of delay as judged in the context of the statute, the second *OCAWU* factor favors neither party because "the statute and regulations governing visa applications do not provide for a specific time frame within which the [State Department] must adjudicate such applications." *Myers*, 2025 WL 1208646, at *8; *see also Denisova*, 2024 WL 2043664, at *6; *Meleo v. Blinken*, No. 23-3495 (RK), 2024 WL 4345289, at *10 (D.N.J. Sept. 30, 2024). And Plaintiffs' reliance on 8 U.S.C. § 1571(b) (D.I. 11 at 12) is unavailing because that statute "only sets an aspirational standard for when USCIS should determine immigration-benefit applications." *Myers*, 2025 WL 1208646, at *8 n.10; *see also Arab v. Blinken*, 600 F. Supp. 3d

---

[6] Plaintiffs suggest that cases involving immigrant visas are inapplicable here because "multi-year waits are an ordinary feature" of immigrant visa proceedings. (D.I. 11 at 10-11). But Plaintiffs cite no authority drawing such a distinction. In any event, the Court has also cited authority finding delays similar to the one here reasonable as a matter of law in the non-immigrant visa context.

59, 70 (D.D.C. 2022) ("§ 1571(b) cannot here carry the weight that plaintiff would like it to shoulder.").

As to the consequences of the agency's delay – that is, the loss of "Plaintiffs' remaining biological window to conceive a child, . . . a health-damaging overnight work schedule abroad adopted solely to preserve her position, and the impending destruction of the petition itself" (D.I. 11 at 11 (citing D.I. 1 ¶¶ 33, 34 & 36)) – the Court is sympathetic to the serious challenges suffered by Plaintiffs but is unable to conclude that the "alleged consequences of the delay have so prejudiced the Plaintiffs as to make the delay unreasonable." *Denisova*, 2024 WL 2043664, at *6; *see also Myers*, 2025 WL 1208646, at *9 ("[T]he consequences of the delay suffered by Plaintiffs are no different than those suffered by many other visa applicants."); *Meleo*, 2024 WL 4345289, at *10 ("[T]he predicament is not unique and the Court cannot expedite Plaintiffs' visa application over other similarly situated applicants.").

And as to the fourth and final *OCAWU* factor, that favors Defendants because Plaintiffs do not allege "any bad faith or improprieties on behalf of Defendants suggesting that they have the capacity to finish processing [Plaintiff Zhang's] visa application but refuse to do so." *Myers*, 2025 WL 1208646, at *9. Considering the broad deference provided to the State Department in processing visa applications, "the Court will not wade into Defendants' internal adjudicatory processes for determining how to process visa applications more efficiently." *Id.*; *see also Meleo*, 2024 WL 4345289, at *10.

In sum, accepting all well-pleaded factual allegations in the Complaint as true and viewing them in the light most favorable to Plaintiffs, the alleged delay is reasonable as a matter of law. As such, the Court recommends that Defendants' motion to dismiss be granted. And because amendment would be futile for the reasons stated above, the Court recommends that dismissal be

with prejudice. *See Myers*, 2025 WL 1208646, at *9 (dismissing with prejudice); *Denisova*, 2024 WL 2043664, at *7 (same).

**C. Plaintiffs' Motion for Leave to File a Sur-Reply (D.I. 13)**

Sur-reply briefs are generally disfavored. *See* D. DEL. LR 7.1.2(b). Leave may be granted where the proposed brief responds to "new evidence, facts, or arguments" raised for the first time in the moving party's reply brief. *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 103 (D. Del. 2016). Plaintiffs contend that a sur-reply brief is warranted so that Plaintiffs can respond to six newly cited cases and two "new" arguments made in Defendants' reply brief. (D.I. 13 at 1-2 (citing D.I. 12 at 5-6 & 10)). The authorities and arguments that Plaintiffs point to are not "new," however, but are rather "directly responsive to arguments made in Plaintiff's answering brief." *Int'l Bus. Machines Corp. v. The Priceline Grp. Inc.*, C.A. No. 15-137-LPS-CJB, 2016 WL 626495, at *1 n.1 (D. Del. Feb. 16, 2016), *report and recommendation adopted*, 2016 WL 1253472 (D. Del. Mar. 30, 2016). Accordingly, Plaintiffs' motion for leave to file a sur-reply is denied. In any event, the Court reviewed Plaintiffs' proposed sur-reply brief, and it does not change the outcome recommended in this opinion.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that Defendants' motion to dismiss (D.I. 8) be GRANTED and the Complaint be DISMISSED WITH PREJUDICE. Plaintiffs' motion for leave to file a sur-reply (D.I. 13) is DENIED, and the Court recommends that Plaintiffs' motion for electronic filing rights (D.I. 16) be DENIED as MOOT upon adoption of the undersigned's Report and Recommendation.

The parties may file objections to this Order and Report and Recommendation within fourteen (14) days after being served with a copy of the Order and Report and Recommendation.

*See* FED. R. CIV. P. 72(a) & (b)(2); *see also* FED. R. CIV. P. 6(d). Any responses to the objections shall be filed fourteen (14) days after the objections. Objections and responses are limited to ten (10) pages. The failure of a party to object may result in the loss of the right to review in the district court and the loss of certain appellate rights or the right to appellate review. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017); *United Steelworkers of America, AFL-CIO v. New Jersey Zinc Co.*, 828 F.2d 1001, 1006-08 (3d Cir. 1987); *Bello v. United Pan Am. Fin. Corp.*, 2025 WL 275109, at *3 n.5 (3d Cir. Jan. 23, 2025).

This Order and Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(A) & (B), Federal Rule of Civil Procedure 72(a) & (b) and District of Delaware Local Rule 72.1. Parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: October 2, 2026

UNITED STATES MAGISTRATE JUDGE